**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION**

| | |
|---|---|
| **AMANDA HUBBARD, AARON NELSON** and **JOSHUA BOYLAND,** for themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> **PAPA JOHN'S INTERNATIONAL, INC.,** <br><br> Defendant. | Case No. <u>5:19-CV-22-TBR</u> <br><br> <u>**JURY TRIAL DEMANDED**</u> |

<u>**CLASS ACTION COMPLAINT**</u>

Amanda Hubbard, Joshua Boyland and Aaron Nelson (collectively "Plaintiffs"), by and through their undersigned attorneys, hereby submit the following class action complaint against Defendant Papa John's International, Inc. ("PJI"). The allegations concerning Plaintiffs' acts and status are based on their actual knowledge, and their allegations concerning all other matters are based on information, belief and the investigation of counsel:

<u>**NATURE OF THE ACTION**</u>

1. This action seeks to redress PJI's systematic policy and practice of paying its delivery drivers net hourly wages that are well below the minimum wage mandated by Kentucky's wage and hour law ("KWHL"), KRS § 337.010 *et seq.*; the Colorado Minimum Wage of Workers Act ("CMWWA"), Colo. Rev. Stat. § 8-6-101 *et seq.*; and the Missouri Minimum Wage Law ("MMWL"), R.S. Mo. § 290.500 *et seq*.

2. The KWHL, CMWWA and MMWL, like virtually all minimum wage laws, require employers to provide their employees with sufficient reimbursements for employment-related expenses to ensure that employees' hourly wages equal or exceed the required minimum wage

after such expenses are deducted from hourly wages.   PJI, however, systematically under-reimbursed its delivery drivers for vehicular wear and tear, gas and other driving-related expenses, thereby ensuring that all of PJI's delivery drivers are effectively paid below the minimum wage (nominal wages – unreimbursed vehicle costs = subminimum wages).

3.   PJI has directly owned and operated at least 708 Papa John's stores in various states, including numerous stores in Kentucky, Colorado and Missouri.   That total includes both stores wholly owned and operated by PJI and other stores operated by PJI as "joint ventures."

4.   Plaintiff Hubbard brings her KWHL claim as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all persons employed as delivery drivers at PJI's Papa John's stores in Kentucky since the date 5 years preceding the filing of this Complaint.

5.   Plaintiff Nelson brings his CMWWA claim as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all persons employed as delivery drivers at PJI's Papa John's stores in Colorado since 2 years prior to Plaintiff Nelson's April 18, 2018 request to file the same class claim as part of *Durling v. Papa John's International, Inc.*, Case No. 7:16-cv-03592-CS-JCM (S.D.N.Y.).

6.   Plaintiff Boyland brings his MMWL claim as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all persons employed as delivery drivers at PJI's Papa John's stores in Missouri since 2 years prior to Plaintiff Boyland's April 18, 2018 request to file the same claims as part of *Durling*.

## JURISDICTION AND VENUE

7.   Jurisdiction is authorized pursuant to 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

8.   Private actions to enforce the KWHL are authorized under KRS § 337.385(1).

9.   Private actions to enforce the CMWWA are authorized under C.R.S. § 8-6-118.

10. Private actions to enforce the MMWL are authorized under R.S. Mo. § 290.527.

11. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2), because PJI employed Plaintiff Amanda Hubbard in this District, PJI is liable for operations at multiple Papa John's pizza stores in this District, PJI maintains its primary place of business in this District, and PJI engaged in the unlawful conduct alleged in this Complaint within this District.

## THE PARTIES

12. PJI is a Delaware corporation that maintains its primary place of business within this District and operates numerous Papa John's stores within this District.

13. Plaintiff Hubbard is an adult resident of Oak Grove, Kentucky, in Christian County, who worked as a delivery driver for a Papa John's store at 16580 Fort Campbell Blvd, in Oak Grove, Kentucky, from about October 2014 to July 2015.

14. Plaintiff Nelson is an adult resident of Denver, Colorado, in Denver County, who worked as a delivery driver for Papa John's stores in Colorado from about September 2016 to March 2017.

15. Plaintiff Boyland is an adult resident of Festus, Missouri, in Jefferson County, who worked as a delivery driver for Papa John's stores in Missouri from about July 2016 to November 2016 and again from about January 2017 to March 2017.

## APPLICABLE FACTS

16. During a typical ten-hour shift, delivery drivers spend about six to seven hours "on the road" making deliveries.

17. Throughout the relevant period, PJI required its delivery drivers to maintain and provide a safe, functioning, insured, and legally-operable automobile to make deliveries.

18. These vehicles, typically two- and four-door passenger sedans, trucks, sport utility vehicles and minivans weigh less than 10,000 pounds.

18. Throughout the relevant period, PJI required its delivery drivers to bear the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance, parts, fluids, and repairs.

19. For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate ("IRS rate") for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes.

20. The IRS rate was $0.56 in 2014, was $0.575 in 2015, was $0.54 in 2016, was $0.535 in 2017, was $0.545 in 2018, and is $0.58 in 2019.

21. Since 2010, many reputable companies that study the cost of owning and operating a motor vehicle and/or estimating reasonable reimbursement rates for vehicular travel, including the American Automobile Association ("AAA"), have set the average cost of operating a vehicle at more than $0.53 per mile.

22. PJI's delivery drivers typically experienced lower gas mileage, more rapid vehicle depreciation, higher insurance rates and greater vehicular expenses than the average business driver because they typically drove in urban areas, in start-and-stop traffic, on a tight schedule, at night, and in inclement weather.

23. Thus, during the relevant period, the actual "out-of-pocket" costs that PJI's delivery drivers paid to provide a safe, functioning, insured and legally-operable automobile for their deliveries was at least $0.535 per mile.

24. PJI's delivery drivers make an average of about three-and-a-half deliveries per hour spent making deliveries.

25. When PJI's delivery drivers worked "on the road," they were paid an hourly wage at or above the tipped minimum, plus a set amount per delivery to ostensibly offset their vehicle costs.

4

However, this set amount always provided delivery drivers with less than the tipped minimum wage plus the amount of their actual vehicle costs incurred in performing their jobs.

26. For example, PJI paid Plaintiff Hubbard about Kentucky's minimum wage rate of $7.25 per hour, including a tip credit applied to the time she spent making deliveries, plus about $1.50 per delivery to offset their vehicle costs, an average total of about $12.50 per hour ($7.25 per hour + (3.5 deliveries x $1.50 per delivery).  Plaintiff Hubbard's average round trip delivery distance was about 6 miles. Thus, she incurred about $11.24 in vehicle expenses per hour she spent making deliveries (3.5 deliveries x 6 miles per delivery x $.535 per mile cost at the lowest IRS rate in effect during the recovery period).  After subtracting vehicle cost of about $11.24 per hour, Plaintiff Hubbard's hourly net wages for work time spent making deliveries totaled only $1.26 per hour ($12.50 total payments per hour - $11.24 per hour vehicle costs = $1.26 net hourly wage). That equates to an overall net wage rate of approximately $3.66 per hour (($7.25 x 40% of work time) + ($1.26 "on-the-road" net hourly wage x 60% of work time)).

27. As another example, PJI paid Plaintiff Nelson about Colorado's minimum wage rate of about $8.31 per hour in 2016 and $9.30 per hour in 2017, including a tip credit applied to the time they spent making deliveries, plus about $1.20 per delivery to offset their vehicle costs, for an average total payments of $12.51 per hour in 2016 ($8.31 per hour wages + $4.20 per hour reimbursements (3.5 deliveries x $1.20 per delivery) = $12.51 total payments per hour) and average total payments per hour in 2017 of $13.50 per hour in 2017 ($9.30 per hour wages + $4.20 per hour reimbursements (3.5 deliveries x $1.20 per delivery) = $13.50 total payments per hour). Plaintiff Nelson's average round trip delivery distance was about 6 miles. Thus, he incurred about $11.24 in vehicle expenses per hour he spent making deliveries (3.5 deliveries x 6 miles per delivery x $.535 per mile cost at the lowest IRS rate in effect during the recovery period).  After

subtracting vehicle cost of about $11.24 per hour, Plaintiff Nelson's hourly net wages for work time spent making deliveries totaled only about $1.27 per hour in 2016 ($12.51 total payments per hour - $11.24 per hour vehicle costs = $1.27 net hourly wage) and only about $4.14 per hour in 2017 ($13.50 total payments per hour - $11.24 per hour vehicle costs = $2.26 net hourly wage). That equates to an overall net wage rate of approximately $4.08 per hour in 2016 (($8.31 per hour x 40% of work time) + ($1.27 "on-the-road" net hourly wage x 60% of work time)) and approximately $5.08 per hour in 2017) (($9.30 per hour x 40% of work time) + ($2.26 "on-the-road" net hourly wage x 60% of work time)).

28. As another example, PJI paid Plaintiff Boyland Missouri's minimum wage rate of about $7.65 in 2016 and $7.70 per hour in 2017, including a tip credit applied to the time he spent making deliveries, plus about $1.00 per delivery to offset their vehicle costs, for an average total payments of $11.15 per hour in 2016 ($7.65 per hour wages + $3.50 per hour reimbursements (3.5 deliveries x $1.00 per delivery) = $11.15 total payments per hour) and average total payments per hour in 2017 of $11.20 per hour in 2017 ($7.70 per hour wages + $3.50 per hour reimbursements (3.5 deliveries x $1.00 per delivery) = $11.20 total payments per hour).  Plaintiff Boyland's average round trip delivery distance was about 6 miles. Thus, he incurred about $11.24 in vehicle expenses per hour he spent making deliveries (3.5 deliveries x 6 miles per delivery x $.535 per mile cost at the lowest IRS rate in effect during the recovery period).  After subtracting vehicle cost of about $11.24 per hour, Plaintiff Boyland's averaged a net *loss* of about $0.09 per hour in 2016 ($11.15 total payments per hour - $11.24 per hour vehicle costs = -$0.09 net hourly wage) and about $0.04 per hour in 2017 ($11.20 total payments per hour - $11.24 per hour vehicle costs = -$0.04 net hourly wage).   That equates to an overall net wage rate of approximately $3.00 per hour in 2016 (($7.65 per hour x 40% of work time) + (-$0.09 "on-the-road" net hourly wage x 60% of work

6

time)) and approximately $3.06 per hour in 2017 (($7.70 per hour x 40% of work time) + (-$0.04 "on-the-road" net hourly wage x 60% of work time)).

29. Indeed, PJI's own documents reflect that, as of approximately April 21, 2017, drivers at Papa John's per delivery stores are reimbursed an average of approximately $1.20 per delivery, which equates to $0.24 per mile (with corporate-owned stores and franchisee-owned stores both reimbursing the drivers at an effective rate of $0.24 per mile). These reimbursement amounts are less than half of the IRS rate and are far too low to reasonably reimburse any drivers for their actual expenses.

## CLASS ACTION ALLEGATIONS

### KWHL Claim

30. Pursuant to Fed. R. Civ. P. 23, Plaintiff Hubbard brings this class action on behalf of herself and the following Class of similarly-situated individuals:

> All persons PJI employed in Kentucky as delivery drivers in any workweek during the 5 years preceding the filing of this Complaint ("the Kentucky Class").

31. The Kentucky Class satisfies the numerosity standard as it consists of at least one thousand persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

32. Questions of fact and law common to the Kentucky Class predominate over any questions affecting only individual members. The questions of law and fact common to the Kentucky Class arising from PJI's actions include, without limitation:

    a. Whether they have worked as delivery drivers for PJI delivering pizza and other food items;

    b. Whether they have delivered pizza and other food items using automobiles not owned or maintained by PJI;

c.  Whether PJI required them to maintain these automobiles in a safe, legally-operable, and insured condition;

d.  Whether they incurred costs for automobile expenses while delivering pizza and other food items for the primary benefit of PJI;

e.  Whether they were subject to similar automobile expenses;

f.  Whether they were subject to similar pay rates;

g.  Whether they were subject to the same policy of failing to reimburse for automobile expenses; and

h.  Whether PJI's pay and reimbursement policies resulted in wages below the Kentucky minimum wage in some or all workweeks.

33. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claim.

34. Plaintiff Hubbard's claim is typical of those of the Kentucky Class in that:

a.  They have worked as delivery drivers for PJI delivering pizza and other food items to PJI's customers;

b.  They have delivered pizza and other food items using automobiles not owned or maintained by PJI;

c.  PJI required them to maintain these automobiles in a safe, legally-operable, and insured condition;

d.  They incurred costs for automobile expenses while delivering pizzas and other food items for the primary benefit of PJI;

e.   They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f.   They were subject to the same pay policies and practices of PJI;

g.   They were subject to the same delivery driver reimbursement policy that underestimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the Kentucky minimum wage in some or all workweeks; and

h.   They were paid at or near PJI's minimum wage before deducting unreimbursed business expenses.

35. Plaintiff Hubbard is an adequate representative of the Kentucky Class because she is a member of that class and her interest does not conflict with the interest of the members of the Kentucky Class she seeks to represent.  The interests of the members of the Kentucky Class will be fairly and adequately protected by Plaintiff Hubbard and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

36. Maintenance of class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Kentucky Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over PJI's alleged violations of the KWHL, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Kentucky Class, and there are no material difficulties impairing the management of a class action.

37. It would be impracticable and undesirable for each member of the Kentucky Class to bring a separate action. In addition, the maintenance of separate actions would place a substantial and

unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Kentucky Class members.

### CMWWA CLAIM

38. Pursuant to Fed. R. Civ. P. 23, Plaintiff Nelson brings this class action on behalf of himself and the following Class of similarly-situated individuals:

> All persons PJI employed in Colorado as delivery drivers in any workweek during the 2 years preceding Plaintiff Nelson's April 18, 2018 request to assert the same claim as part of *Durling* ("the Colorado Class").

39. The Colorado Class satisfies the numerosity standard as it consists of at least one thousand persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

40. Questions of fact and law common to the Colorado Class predominate over any questions affecting only individual members. The questions of law and fact common to the Colorado Class arising from PJI's actions include, without limitation:

    a.  Whether they have worked as delivery drivers for PJI delivering pizza and other food items;

    b.  Whether they have delivered pizza and other food items using automobiles not owned or maintained by PJI;

    c.  Whether PJI required them to maintain these automobiles in a safe, legally-operable, and insured condition;

    d.  Whether they incurred costs for automobile expenses while delivering pizza and other food items for the primary benefit of PJI;

    e.  Whether they were subject to similar automobile expenses;

    f.  Whether they were subject to similar pay rates;

g.   Whether they were subject to the same policy of failing to reimburse for automobile expenses; and

h.   Whether PJI's pay and reimbursement policies resulted in wages below the Colorado minimum wage in some or all workweeks.

41. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claim.

42. Plaintiff Nelson's claim is typical of those of the Colorado Class in that:

a.   They have worked as delivery drivers for PJI delivering pizza and other food items to PJI's customers;

b.   They have delivered pizza and other food items using automobiles not owned or maintained by PJI;

c.   PJI required them to maintain these automobiles in a safe, legally-operable, and insured condition;

d.   They incurred costs for automobile expenses while delivering pizzas and other food items for the primary benefit of PJI;

e.   They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f.   They were subject to the same pay policies and practices of PJI;

g.   They were subject to the same delivery driver reimbursement policy that underestimates automobile expenses per mile, and thereby systematically deprived

11

of reasonably approximate reimbursements, resulting in wages below the Colorado minimum wage in some or all workweeks; and

h.   They were paid at or near PJI's minimum wage before deducting unreimbursed business expenses.

43. Plaintiff Nelson is an adequate representative of the Colorado Class because he is a member of that class and his interest does not conflict with the interest of the members of the Colorado Class he seeks to represent. The interests of the members of the Colorado Class will be fairly and adequately protected by Plaintiff Nelson and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

44. Maintenance of class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Colorado Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over PJI's alleged violations of the CMWWA, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Colorado Class, and there are no material difficulties impairing the management of a class action.

45. It would be impracticable and undesirable for each member of the Colorado Class to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Colorado Class members.

## MMWL CLAIM

46. Pursuant to Fed. R. Civ. P. 23, Plaintiff Boyland brings this class action on behalf of himself and the following Class of similarly-situated individuals:

> All persons PJI employed in Missouri as delivery drivers in any workweek during the 2 years preceding Plaintiff Boyland's April 18, 2018 request to assert the same claim as part of *Durling* ("the Missouri Class").

47. The Missouri Class satisfies the numerosity standard as it consists of at least one thousand persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

48. Questions of fact and law common to the Missouri Class predominate over any questions affecting only individual members. The questions of law and fact common to the Missouri Class arising from PJI's actions include, without limitation:

    a. Whether they have worked as delivery drivers for PJI delivering pizza and other food items;

    b. Whether they have delivered pizza and other food items using automobiles not owned or maintained by PJI;

    c. Whether PJI required them to maintain these automobiles in a safe, legally-operable, and insured condition;

    d. Whether they incurred costs for automobile expenses while delivering pizza and other food items for the primary benefit of PJI;

    e. Whether they were subject to similar automobile expenses;

    f. Whether they were subject to similar pay rates;

    g. Whether they were subject to the same policy of failing to reimburse for automobile expenses; and

h.   Whether PJI's pay and reimbursement policies resulted in wages below the Missouri minimum wage in some or all workweeks.

49. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claim.

50. Plaintiff Boyland's claim is typical of those of the Missouri Class in that:

a.   They have worked as delivery drivers for PJI delivering pizza and other food items to PJI's customers;

b.   They have delivered pizza and other food items using automobiles not owned or maintained by PJI;

c.   PJI required them to maintain these automobiles in a safe, legally-operable, and insured condition;

d.   They incurred costs for automobile expenses while delivering pizzas and other food items for the primary benefit of PJI;

e.   They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f.   They were subject to the same pay policies and practices of PJI;

g.   They were subject to the same delivery driver reimbursement policy that underestimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the Missouri minimum wage in some or all workweeks; and

14

h.  They were paid at or near PJI's minimum wage before deducting unreimbursed business expenses.

51. Plaintiff Boyland is an adequate representative of the Missouri Class because he is a member of that class and his interest does not conflict with the interest of the members of the Missouri Class he seeks to represent.  The interests of the members of the Missouri Class will be fairly and adequately protected by Plaintiff Boyland and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

52. Maintenance of class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Missouri Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over PJI's alleged violations of the MMWL, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Missouri Class, and there are no material difficulties impairing the management of a class action.

53. It would be impracticable and undesirable for each member of the Missouri Class to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Missouri Class members.

## CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF KENTUCKY'S WAGE AND HOUR LAW
### (On Behalf of the Kentucky Class)

54. Plaintiff Hubbard repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

55. At all relevant times herein, Plaintiff Hubbard and the Kentucky Class have been entitled to the rights, protections, and benefits provided under the KWHL, KRS § 337.010 *et seq*.

56. The KWHL regulates, among other things, the payment of minimum wage by employers who employ any person in Kentucky, subject to limited exemptions not applicable herein.  KRS §§ 337.010(2)(a) & 337.275(1)

57. During all times relevant to this action, PJI was the "employer" of Plaintiff Hubbard and the Kentucky Class within the meaning of the KWHL.  KRS § 337.010(1)(d).

58. During all times relevant to this action, Plaintiff Hubbard and the Kentucky Class were PJI's "employees" within the meaning of the KMWL.  KRS § 337.275(2)(a).

59. The KWHL exempts certain categories of employees from Kentucky's minimum wage and other obligations, none of which apply to Plaintiff Hubbard or members of the Kentucky Class. *Id.*

60. Kentucky's minimum wage has been $7.25 per hour since July 1, 2009.  KRS § 337.275(1).

61. PJI, pursuant to its policy and practice, violated the KWHL by failing and refusing to pay Plaintiff Hubbard and the Kentucky Class minimum wage after deduction of unreimbursed vehicle expenses incurred on the job.

62. Plaintiff Hubbard and the Kentucky Class are victims of a uniform and employer-based compensation policy. Upon information and belief, this uniform policy, in violation of the KWHL, has been applied, and continues to be applied, to all Kentucky Class members employed at PJI's Papa John's stores in Kentucky.

63. Plaintiff Hubbard and all Kentucky Class members are entitled to damages equal to the difference between the minimum wage and actual wages received after deducting un-reimbursed vehicle expenses within the 5 years preceding the filing of this Complaint.  KRS § 337.385(1).

64. Plaintiff Hubbard and all Kentucky Class members are entitled to an equal amount as and for liquidated damages.  *Id.*

65. Plaintiff Hubbard and all Kentucky Class members are entitled to their attorney's fees and costs. *Id.*

66. Plaintiff Hubbard and all Kentucky Class members are entitled to pre- and post-judgment interest at the applicable legal rate.

WHEREFORE, on Count I of this Complaint, Plaintiff Hubbard and the Kentucky Class demand judgment against PJI and pray for: (1) compensatory damages; (2) liquidated damages, (3) attorney's fees and costs; (4) pre-judgment and post judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## COUNT II - VIOLATION OF THE COLORADO MINIMUM WAGE ACT
### (On Behalf of the Colorado Class)

67. Plaintiff Aaron Nelson repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

68. At all relevant times herein, Plaintiff Nelson and the Colorado Class have been entitled to the rights, protections, and benefits provided under the CMWWA, C.R.S. § 8-6-101, *et seq.*, and the wage orders incorporated therein, 7 CCR § 1103-1.

69. The CMWWA regulates, among other things, the payment of minimum wage by employers who employ any person in Colorado, subject to limited exemptions not applicable herein. C.R.S. § 8-6-108.5, *et seq.*; 7 CCR 1103-1.

70. During all times relevant to this action, PJI was the "employer" of Plaintiff Nelson and the Class within the meaning of the CMWWA. *Id.*

71. During all times relevant to this action, Plaintiff Nelson and the Colorado Class were PJI's "employees" within the meaning of the CMWWA. *Id.*

72. The CMWWA exempts certain categories of employees from Colorado's minimum wage and other obligations, none of which apply to Plaintiff Nelson or members of the Colorado Class. C.R.S. § 8-6-108.5, *et seq*.; 7 CCR 1103-1.

73. Colorado's minimum wage was $8.31 per hour in 2016, was $9.30 per hour in 2017, was $10.20 per hour in 2018, and is $11.10 per hour in 2019.

74. PJI, pursuant to its policy and practice, violated the CMWWA by failing and refusing to pay Plaintiff Nelson and the Colorado Class minimum wage after deduction of unreimbursed vehicle expenses incurred on the job.

75. Plaintiff Nelson and the Colorado Class are victims of a uniform and employer-based compensation policy. Upon information and belief, this uniform policy, in violation of the CMWWA, has been applied, and continues to be applied, to all Class members in PJI's Papa John's stores in Colorado.

76. Plaintiff Nelson and all similarly situated employees are entitled to damages equal to the difference between the minimum wage and actual wages received after deducting un-reimbursed vehicle expenses within the 2 years preceding the filing of this Complaint. C.R.S.A. § 8-6-118.

77. Plaintiff Nelson and all Colorado Class members are entitled to their attorney's fees and costs. *Id.*

78. Plaintiff Nelson and all Colorado Class members are entitled to pre- and post-judgment interest at the applicable legal rate.

WHEREFORE, on Count II of this Complaint, Plaintiff Nelson and the Colorado Class demand judgment against PJI and pray for: (1) compensatory damages; (2) liquidated damages, (3) attorney's fees and costs; (4) pre-judgment and post judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## COUNT III - VIOLATION OF THE MISSOURI MINIMUM WAGE ACT
### (On Behalf of the Missouri Class)

79. Plaintiff Boyland repeats, realleges and incorporates by reference each of the foregoing allegations as though fully set forth herein.

80. At all relevant times, PJI was the "employer" of Plaintiff Boyland and members of the Missouri Class as the term is defined in R.S. Mo. §§ 290.500(3), 290.500(4).

81. At all relevant times, Plaintiff Boyland and the Missouri Class members were PJI's "employees" as the term is defined in R.S. Mo. § 290.500(3).

82. At all relevant times, Plaintiff Boyland and members of the Missouri Class have been entitled to the benefits, rights and protections conferred by the MMWL.  R.S. Mo. § 290.500 *et seq.*

83. The MMWL regulates, *inter alia*, employers' responsibility to pay employees minimum wage.  R.S. Mo. §§ 290.500(3), 290.502.1.

84. Missouri's minimum wage was $7.65 per hour in 2016, was $7.70 per hour in 2017, was $7.85 per hour in 2018, and is $8.60 per hour in 2019.

85. PJI knew or should have known that its reimbursement policy and practice failed to compensate delivery drivers at or above Missouri's minimum wage.

86. PJI has willfully violated Missouri law by failing to pay Plaintiff Boyland and Missouri Class members Missouri's applicable minimum wage rate.

87. PJI willfully failed to keep accurate records of all expenses incurred by its employees.

88. Plaintiff Boyland and Missouri Class members are victims of a uniform and employer-based compensation policy that has been applied to all delivery driver employees employed by PJI in Missouri.

89. Plaintiff Boyland and Missouri Class members are entitled to damages equal to the difference between the applicable minimum wage and actual wages received after deducting job-related expenses plus liquidated damages.  R.S. Mo. § 290.527.

90. Plaintiff Boyland and Missouri Class members are entitled to an additional equal amount as liquidated damages.  *Id.*

91. Plaintiff Boyland and Missouri Class Members are entitled to reasonable attorney's fees and costs.  *Id.*

92. Plaintiff Boyland and the Missouri Class are entitled to pre- and post-judgment interest at the applicable legal rate.

WHEREFORE, on Count III of this Complaint, Plaintiff Boyland and the Missouri Class demand judgment against PJI and pray for: (1) compensatory damages; (2) liquidated damages, (3) attorney's fees and costs; (4) pre-judgment and post judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through their undersigned counsel, hereby demand a jury trial in the above-captioned matter.

February 12, 2019

Respectfully submitted,

By:     */s/ David Suetholz*

David Suetholz, KY BPR#90199
J. Gerard Stranch IV
(*pro hac vice* forthcoming)
**BRANSTETTER, STRANCH &**
**JENNINGS, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee, 37203
Telephone:     (877) 369-0267
Fax:              (615) 255-5419
davids@bsjfirm.com
gerards@bsjfirm.com


**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
Jeremiah Frei-Pearson
(*pro hac vice* forthcoming)
D. Greg Blankinship
(*pro hac vice* forthcoming)
Andrew C. White
(*pro hac vice* forthcoming)
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
jfrei-pearson@FBFGLaw.com

**WEINHAUS & POTASHNICK, LLP**
Mark Potashnick
(*pro hac vice* forthcoming)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

**PAUL, LLP**
Richard M. Paul III
(*pro hac vice* forthcoming)
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone:     (816) 984-8100
Rick@PaulLLP.com

**STEPHAN ZOURAS, LLP**
David J. Cohen
(*pro hac vice* forthcoming)
604 Spruce Street
Philadelphia, PA 19106
Telephone: (215) 873-4836
dcohen@stephanzouras.com

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Kentucky

| | |
|---|---|
| AMANDA HUBBARD, AARON NELSON and JOSHUA BOYLAND, for themselves and all others similarly situated<br><br>*Plaintiff(s)*<br>v.<br><br>PAPA JOHN'S INTERNATIONAL, INC<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Papa John's International, Inc.
c/o Registered Agent
C T Corporation System
306 W. Main St., Ste. 512
Frankfort, KY 40601

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Dave Suetholz and J. Gerard Stranch
Branstetter Stranch & Jennings PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____           _____
                                                                *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

□ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

□ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

□ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

□ I returned the summons unexecuted because _____ ; or

□ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00   .

I declare under penalty of perjury that this information is true.


Date: _____               _____
                                            *Server's signature*

                                   _____
                                            *Printed name and title*


                                   _____
                                            *Server's address*

Additional information regarding attempted service, etc: